UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case Number: 18-22052-CIV-MARTINEZ-OTAZO-REYES

DELLA R. MUHAMMAD,
    Plaintiff,

vs.

CARRINGTON MORTGAGE SERVICES, LLC,
    Defendant.
_____/

## **ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

THIS CAUSE came before the Court on Carrington Mortgage Services, LLC's ("Defendant") Motion to Dismiss for Failure to State a Cause of Action with Incorporated Memorandum of Law (the "Motion to Dismiss") [ECF No. 5]. Della R. Muhammad ("Plaintiff") filed a response in opposition [ECF No. 15] and Defendant filed a reply [ECF No. 17]. The Court has carefully considered Defendant's Motion, the response thereto, the record in this action,[1] and is otherwise fully advised in the premises.

### I.    Background

Plaintiff filed suit against Defendant, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), arising out of Defendant's allegedly unlawful attempts to collect on a mortgage debt [ECF No. 1]. In her Complaint, Plaintiff alleges that prior to December 18, 2017, Defendant or Defendant's predecessor "had declared Plaintiff to be in default upon the alleged mortgage debt, accelerated the loan and filed a separate foreclosure action." *Id.* ¶ 10. On or about December 18, 2017, Defendant mailed her a letter through her

---

[1] This includes but is not limited to: Defendant's supplemental authorities and the cases cited therein [ECF Nos. 26, 30, 31, 36].

counsel "seeking to charge late fees" on her "alleged mortgage." *Id.* ¶ 9. According to Plaintiff, Defendant continued to unlawfully send her written correspondence monthly, seeking late fees on the mortgage. *Id.* ¶¶ 11-12. Plaintiff specifically alleges that Defendant's December 18, 2017 letter and subsequent correspondence violated 15 U.S.C. § 1692e (Count I) as Defendant falsely represented the character, amount or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(a) and used false or deceptive means to collect a debt in violation of 15 U.S.C. § 1692e(10). *Id.* ¶¶ 14-17. Moreover, Plaintiff further alleges that the December 18, 2017 letter and subsequent correspondence also violated 15 U.S.C. § 1692f(1) (Count II) when Defendant "falsely represented" that it "was entitled to recover late fees upon an alleged debt after Plaintiff was allegedly already in default." *Id.* ¶¶ 24-25. Copies of Defendant's mailed correspondence to Plaintiff are attached to Plaintiff's Complaint as Exhibit A (the "letters") [ECF No. 1-1] and include letters dated December 18, 2017 (*id.* at 1-4), January 8, 2018 (*id.* at 5-8), February 19, 2018 (*id.* at 9-12), March 19, 2018 (*id.* at 13-16), and April 18, 2018 (*id.* at 17-20).

Defendant now moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 5]. Defendant argues (1) that the letters are not debt collection activity but rather "periodic account statements" including information that is required under the Truth in Lending Act, 12 C.F.R. § 1026 *et. seq*. ("TILA"), (2) that the "late fees are expressly authorized by the loan agreement," and (3) that the issues presented in this case should be addressed in the foreclosure action [ECF No. 5].

## II. Legal Standard

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe*

*of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When a complaint fails "to state a claim upon which relief can be granted," it should be dismissed. Fed. R. Civ. P. 12(b)(6). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In deciding a motion to dismiss, courts can also consider documents attached to a motion to dismiss "without converting the motion into one for summary judgment" so long as the documents are "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). A document is "undisputed" if "the authenticity of the document is not challenged." *Id.*

### III. Discussion

#### A. Monthly Mortgage Statements as Debt Collection Activity

Defendant first argues that Plaintiff failed to state a valid cause of action as to both counts in the Complaint as the letters do not constitute "debt collection activity" [ECF No. 5, at 4]. "To overcome a motion to dismiss a FDCPA claim, a plaintiff must allege among other things, (1) that the defendant is a debt collector and (2) that the challenged conduct is related to debt collection." *Green v. Specialized Loan Servicing LLC*, No. 17-15681, 2019 WL 1111405, at *3 (11th Cir. Mar. 11, 2019) (internal quotations and citations omitted). Defendant contends that because TILA requires the letters at issue here, they are not debt collection activity. Specifically, Defendant

argues that TILA requires periodic account statements[2] that include information as to "[t]he total payment amount needed to bring the account current . . . [t]he amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received"[3] [ECF No. 5, at 4].

The issue this case presents is far from a matter of first impression in this district. Courts in this district have previously held that monthly mortgage statements sent pursuant to TILA do not constitute debt collection activity where the statements lack debt collection language or substantially comply with TILA. *See, e.g. Jones v. Select Portfolio Servicing Inc.*, No. 18-20389, 2018 WL 2316636, at *4 (S.D. Fla. May 2, 2018) (holding that where "mortgage servicer has sent mortgage statements substantially in compliance with the TILA, which do not materially deviate in substance from the Regulation Z model form . . . it should not be held liable under § 1692c of the FDCPA for its apparent good faith compliance with the TILA"); *Mills v. Select Portfolio Servicing, Inc.*, No. 18-61012, 2018 WL 5113001, at *2 (S.D. Fla. Oct. 19, 2018) (agreeing with *Jones* that mortgage statements sent substantially in compliance with TILA "are not communications in connection with a collection of a debt"); *Brown v. Select Portfolio Servicing, Inc.*, No. 16-62999, 2017 WL 1157253, at *4 (S.D. Fla. Mar. 24, 2017) (finding that monthly statement sent pursuant to TILA was not "debt collection activity" and that said statement failed to include "debt collection language").

At least two courts out of this district have found that a servicer's monthly mortgage statement, while sent pursuant to TILA, can still violate the FDCPA. *See Lear v. Select Portfolio*

---

[2] TILA § 1026.41(a)(2) provides in pertinent part: "Periodic statements. A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section."

[3] TILA § 1026.41(d)(8)(iv) requires the servicer to provide "[d]elinquency information," including but not limited to "[t]he total payment amount needed to bring the account current." TILA § 1026.41 provides that the periodic statement shall include "[t]he amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received."

*Servicing, Inc.*, 309 F.Supp.3d 1237, 1240 (S.D. Fla. Apr. 25, 2018) (finding that periodic statements went "beyond" TILA's requirements and appeared to be "debt collection communications" as they stated "This is an attempt to collect a debt"); *Jackson v. Carrington Mortg. Servs., LLC*, No. 17-60516, 2017 WL 4347382, at *3 (S.D. Fla. Sept. 29, 2017) (finding that inclusion of "Payment Coupon" in monthly statement form created factual dispute as to whether defendant's activity "related to debt collection," notwithstanding TILA requirements). Accordingly, as *Leah* and *Jackson* demonstrate, "compliance with TILA may not automatically exonerate Defendant as 'a communication can have more than one purpose . . . e.g. providing information as well as collecting a debt.'" *Jones,* 2018 WL 2316636, at *3 (S.D. Fla. May 2, 2018) (citing *Pinson v. Albertelli Law Partners, LLC*, 618 Fed. Appx. 551, 553 (11th Cir. 2015)) (internal alterations omitted). Thus, as the varying results reached by courts in this district demonstrate, courts must determine whether monthly statements were sent in connection with the collection of a debt on a case-by-case basis.

When deciding whether the letters here were sent in connection with the collection of a debt, this Court "look[s] to the language of the letters in question," including whether that language disclose[s] that the [sender] was attempting to collect a debt and was acting as a debt collector." *Pinson*, 618 Fed. Appx. at 553 (citing *Caceres v. McCalla Raymer, LLC*, 775 F.3d 1299, 1302 (11th Cir. 2014)). "A demand for payment need not be express; there may be an implicit demand for payment where the letter states the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting a debt." *Id.* (citing *Caceres*, 775 F.3d at 1303 n.2). While this Court acknowledges that TILA requires lenders to send monthly mortgage statements that include certain

information to borrowers,[4] such statements "may nevertheless include additional language that constitutes debt collection." *Green*, 2019 WL 1111405, at *6.

The letters in this case vary from three to four pages in length [ECF No. 1-1]. While far from carbon copies of the H-30(B) Sample Form of Periodic Statement with Delinquency Box (otherwise known as "the Regulation Z model form"), the letters' first pages appear to reflect the Regulation Z model form as they contain the amount due, the payment due date, the amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received. *See* 12 C.F.R. §1026.41(d)(1)(i)–(iii). Moreover, the letters' first pages contain an explanation of the amount due and past payment breakdown, while the second pages include a list of transaction activity and delinquency information.[5] While the first two pages all contain information required by TILA, those pages also include language not included in the Regulation Z model form. The first page directs the recipient to "Please detach and return with your payment" the detachable bottom portion of the page [ECF No. 1-1, at 1, 5, 9, 13, 17]. The detachable coupon also states "Make a payment at CarringtonMS.com. Pay by Check or AutoPay for free!" *See id.* The letters' second pages also state as follows:



[ECF No. 1-1, at 2, 6, 10, 14, 18]. This information is not included in the Regulation Z model

---

[4] *Green v. Specialized Loan Servicing, LLC*, No. 17-15681, 2019 WL 1111405, at *5 n.7 (11th Cir. Mar. 11, 2019) (noting that lenders are required to send monthly mortgage statements under TILA with certain information, such as "Amount due," "Explanation of amount due," "Past Payment Breakdown," "Transaction activity," and "Delinquency information") (citing 12 C.F.R. § 1026.41(d)).

[5] Required by 12 C.F.R. §1026.41(d)(2)–(4), (8).

form.

Moreover, depending on the statement, the second or third page of the letters include the following language:

> **Announcing CMS AutoPay Service!**
> We are now able to automatically draft your monthly payments from your checking or savings account. The CMS AutoPay is fast, free, convenient and secure way to pay your mortgage. Enroll today by calling our Customer Service Department at (800) 561-4567 or log into your account on CarringtonMS.com.

[ECF No. 1-1, at 3, 7, 10, 14, 19]. That information is not part of the Regulation Z model form.

In the letters' final page, approximately one third of the page includes information pertaining to "Payment Information" and "Other Payment Options" [ECF No. 4, 8, 11, 15, 20]. The payment sections provide as follows:

> **Payment Information**
> Please visit the website at www.CarringtonMS.com for convenient payment options. Payments can be made by Check or AutoPay at no charge. Information about additional payment options is available at www.CarringtonMS.com. If you choose to mail your payment, please detach the coupon portion of this statement, and mail it with your check or money order to the Payment Processing Center using the return envelope provided. Be sure that the address shows through the window of the envelope. Be sure to write your account number on your check or money order. **PLEASE DO NOT SEND CASH.** Do not delay payments if you are awaiting correspondence, research or a new billing statement. Please do not send the entire statement or include correspondence with your payment. Postdated checks will be processed on the date received unless prohibited by applicable law.
>
> **When you provide a check as payment,** you authorize us either to use information from your check to make a one-time electronic funds transfer from your account or to process the payment as a check transaction.
>
> **When we use information from your check to make an electronic funds transfer,** funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.
>
> **Overnight Payment Mailing Address:**
> Carrington Mortgage Services, LLC
> Cashiering Dept. 2-270
> 1600 South Douglass Road, Suites 110 & 200-A
> Anaheim, CA 92806
>
> **Other Payment Options**
> **Western Union/Quick Collect**
> To use Quick Collect to make a payment, follow these easy steps:
> 1. Call **1-800-325-6000**, press #2 to locate the Western Union Agent nearest you or go to **www.westernunion.com**.
> 2. At the Agent location, select and fill in the blue Payment Form completely. Include the following information:
> **Pay to: Carrington Mortgage Services, LLC**
> **City Code: CarringtonMS**
> **State: CA**
> 3. Be sure your name and account number are correctly written on the form.
>
> This transaction will cost you a nominal fee. To contact Western Union Customer Service, please call 1-800-238-5772.
>
> **MoneyGram**
> To use MoneyGram to make a payment, follow these easy steps:
> 1. Call **1-800-926-9400** to locate a MoneyGram Agent or go to **www.moneygram.com/efinsUs/**. MoneyGram is located in all Walmart stores and CVS pharmacies.
> 2. At the Agent location, select and fill in the blue Payment Form completely. Include the following information:
> **Pay to: Carrington Mortgage Services, LLC**
> **Receive Code: 7998**
> 3. Be sure your name and account number are correctly written on the form.
>
> This transaction will cost you a nominal fee. To contact Money-Gram Customer Service, please call 1-800-555-3133.
>
> Note: Payments transmitted to our office after the close of business will be applied to your account the next business day.

*See id.* The Regulation Z model form does not include any of the information provided in these

sections.

Last, but certainly not least, the final page of the letters includes a section titled, "Important Notices," which reads as follows:

> **Important Notices**
> **Mini Miranda** - This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

*Id.* This information is also not included in the Regulation Z model form. Notably, Defendant states that the communication is in fact "from a debt collector" and is "for the purpose of collecting a debt." *Id.*

Applying *Pinson* to this case, after reviewing the language contained in the letters, this Court finds that Plaintiff has provided sufficient evidence that the letters were sent in connection with the collection of a debt. At a minimum, the Court finds that the letters include "an implicit demand for payment," as each letter states "the amount of the debt, describes how the debt may be paid, provides the phone number and address to send payment, and expressly states that the letter is for the purpose of collecting a debt." *Pinson*, 618 Fed. Appx. at 553 (citing *Caceres*, 775 F.3d at 1303 n.2). The letters also state that "the communication is from a debt collector" [ECF No. 4, 8, 11, 15, 20]. While the letters were in fact compliant with TILA in some respects, this Court finds that in addition to adhering to TILA's requirements of providing certain information to a debtor, they also appear to seek the collection of a debt. *Pinson*, 618 Fed. Appx. at 553. Unlike the letters in *Jones*, *Mills*, and *Brown*, the letters in this case went beyond what is required by TILA as they contain debt collection language and fail to substantially comply with the Regulation Z model form. Accordingly, Defendant's Motion to Dismiss on the basis that the letters do not constitute debt collection activity is denied. Notwithstanding this Court's finding that the letters

constitute debt collection activity, this Court must still determine whether Defendant engaged in an act prohibited by the FDCPA by sending said letters to Plaintiff's counsel.

   B. **The Letters' Late Fee Disclosures**

Next, Defendant moves to dismiss Plaintiff's Complaint on the basis that Defendant has a legal right to collect the late fees based on the note, mortgage contract, and loan modification agreement [ECF No. 5, at 6]. As previously noted, "[i]n order to prevail on an FDCPA claim, a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Lima v. Bank of Am.*, 249 F.Supp.3d 1308, 1312 (S.D. Fla. 2017) (citing *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)). In this case, Plaintiff alleges violations arising under 15 U.S.C. § 1692e and § 1692f [ECF No. 1 ¶¶ 17, 25].

With respect to Count I of Plaintiff's Complaint, under 15 U.S.C. § 1692e,[6] "[a] debt collector may not use any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt." Section 1692e violations include a debt collector's "false representation of . . . the character, amount or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(a), (10). Relevant to Count II, 15 U.S.C. § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f violations include "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §

---

[6] Section 1692e pertains to "[f]alse or misleading representations" by debt collectors.

1692f(1). Defendant posits that it did not violate the foregoing FDCPA provisions when sending the letters to Plaintiff's counsel because it sought late fees as provided for in the note, mortgage contract, and loan modification [ECF No. 5, at 6].

In support of its argument, Defendant states that the note, attached to its Motion to Dismiss, expressly authorizes the late fees in question [ECF No. 5-1, at 7]. Section 6(A) of the note provides as follows:

> **Late Charge for Overdue Payments**: If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

*Id.* Under section 3(A) of the note, payments are due on the first day of the month. *Id.* at 6. Pursuant to a loan modification agreement entered into on April 27, 2009, Plaintiff was required to make monthly payments of principal and interest in the amount of $1237.92. *Id.* at 28. As a result, Defendant argues that it had a legal right to pursue collection of the $61.89 late fee (5% of $1237.92) through the letters. Plaintiff does not appear to dispute that the foregoing terms of the note and loan modification agreement, however, she does contest Defendant' right to collect such fees after the mortgage's acceleration [ECF No. 15, at 6].

At this stage in the proceedings, this Court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro*, 693 F.3d at 1337. Here, Plaintiff has alleged that "prior to December 18, 2017," Defendant or its predecessor "had declared Plaintiff to be in default upon the alleged mortgage debt, accelerated the loan and filed a separate foreclosure action" [ECF No. 1 ¶ 10]. A review of the statements reflect that the late fees in question were incurred after the date of acceleration, as the letters were all sent on or after December 18, 2017 [ECF No. 1-1]. Accordingly, while the note

expressly provides for late fees for overdue payments [ECF No. 5-1, at 7], this Court must review the mortgage contract in order to determine whether Defendant had a legal right to send late fee disclosures after the mortgage's acceleration.

The mortgage contract provides that if Plaintiff (the borrower in this case) meets certain conditions, he or she has "the right to have the enforcement of this Security Interest discontinued" after acceleration [ECF No. 5-2, at 10]. One of those conditions requires Plaintiff to pay the Lender "all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred." *Id.* Defendant cites to *Patel v. Seterus*, as that case involved the same "as if no acceleration had occurred" clause within the mortgage contract. *Patel v. Seterus, Inc.*, No. 14-1585, 2015 WL 13547010, at *4 (M.D. Fla. June 19, 2015). The *Patel* court found that the clause provided the "noteholder the legal right to treat the note as if it had not been accelerated for purposes of reinstatement." *Id.* Hence, the court in *Patel* noted that but for the mortgage's acceleration, "monthly payments would have continued to become due, and the noteholder would have been entitled to assess late fees on those sums that were past due." *Id.; see also Jackson v. Carrington Mortgage Services, LLC*, No. 17-60516, 2017 WL 5513704 (S.D. Fla. Nov. 17, 2017) ("*Jackson* II") ("The language of the mortgage contract in *Patel* is clear: in order for the plaintiff to reinstate the mortgage, he must pay late fees and monthly payments as though acceleration had never occurred."). However, the *Patel* court's conclusion that the defendant there "had a contractual and legal right to require payment of post-acceleration late fees" hinged on the fact that plaintiffs "retained the right to reinstate." *Patel*, 2015 WL 13547010, at *4.

In this case, section 19 of the mortgage states, in relevant part:

[Borrower] shall have the right to have enforcement of this Security Interest discontinued at any time prior to the earliest of: (a) five days before the sale of the Property pursuant to any power of sale contained in this Security Interest; (b) such other period as Applicable Law might specify for the termination of Borrower's

right to reinstatement; (c) entry of a judgment enforcing this Security Interest.

[ECF No. 5-2, at 10]. At this stage in the proceedings, based on the contractual language included in section 19 of the mortgage and the record in this case, this Court is unable to make a determination as to whether Plaintiff still had a right to reinstate after the alleged acceleration at the time she received Defendant's letters.[7] Accordingly, Defendant's Motion to Dismiss on the grounds that Defendant was contractually authorized to collect the late fees in question is denied at this time.

### C. State Court Action

Lastly, Defendant argues that dismissal of Plaintiff's Complaint is appropriate as Plaintiff "must establish the filing of the foreclosure action validly accelerated her loan and that [Defendant] is seeking amounts not properly due and owing under the loan agreement" [ECF No. 5, at 9]. As a result, Defendant argues that "[t]hese joint issues of law and fact are squarely before the state court in the foreclosure action" and "are properly left to that court." *Id.* Defendant only cites to and discusses one case in support of this proposition, *Garrison v. Caliber Home Loans, Inc.*, 233 F.Supp.3d 1282 (M.D. Fla. 2017). In *Garrison*, the plaintiff filed suit against the defendant mortgage and promissory note servicer, alleging multiple causes of action, including FDCPA claims. *Id.* at 1285-86. One of the *Garrison* FDCPA claims was based on defendant's alleged attempts to recover a portion of the loan after the applicable statute of limitations had passed. *Id.* at 1288. When addressing this narrow issue, the court held that the statute of limitation issue did "not provide a plausible basis for [p]laintiff's claims" and that the statute of limitation issue "should be raised—if at all—as an affirmative defense to an actual collection or foreclosure action." *Id.* at 1294.

---

[7] If Plaintiff still had a right to reinstate at the time the letters were sent, based on the language in the mortgage, it appears that Defendant's letters seeking late fees would not violate the FDCPA. *Patel*, 2015 WL 13547010, at *4.

This Court finds *Garrison* easily distinguishable, as the instant case does not involve an FDCPA claim based on communications seeking a debt after the statute of limitations had run for collecting said debt. Here, the well-pleaded allegations of Plaintiff's Complaint state violations of the FDCPA arising under 15 U.S.C. § 1692e and §1692f arising from Defendant's allegedly unlawful collection of late fees after Plaintiff's mortgage was accelerated. Absent persuasive or binding authority directing this Court to abstain exercising its jurisdiction, Plaintiff's Complaint shall proceed at this time. Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint on this ground is denied.

### IV. Conclusion

Accordingly, after careful consideration, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendant's Motion to Dismiss [ECF No. 5] is **DENIED** for the reasons stated herein.

2. Defendant shall file its answer and any affirmative defenses to Plaintiff's Complaint **within fourteen (14) days from the date of this Order**.

3. Defendant's Motion to Stay Discovery Pending Ruling on Dispositive Motion to Dismiss [ECF No. 18] is **DENIED as MOOT.**

DONE AND ORDERED in Chambers at Miami, Florida, this 19th day of March, 2019.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record